[Cite as *State v. Webley*, 2013-Ohio-4598.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99489**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# GARETH C. WEBLEY

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-570278

**BEFORE:** McCormack, J., Rocco, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** October 17, 2013

**ATTORNEYS FOR APPELLANT**

Larry W. Zukerman
S. Michael Lear
Brian A. Murray
Zukerman, Daiker & Lear
3912 Prospect Ave., East
Cleveland, OH 44115


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Mary H. McGrath
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1} Gareth C. Webley appeals from a protection order issued by the Cuyahoga County Court of Common Pleas. The court granted the protection order after a criminal complaint was filed against Webley alleging that he committed a sex offense against his live-in girlfriend's daughter. For the following reasons, we affirm the court's decision granting the protection order.

{¶2} Webley lived with his girlfriend, Brea Weisman, and her two minor children for 14 months prior to an incident on New Years Eve, 2012. According to Weisman, sometime past midnight, she found Webley passed out and asleep in her nine-year-old daughter's bed, with his pants pulled down. She called the police. Based on the incident, on January 2, 2013, the Cuyahoga County prosecutor's office filed a criminal complaint against Webley.

{¶3} On the same day, Webley went before the trial court for his initial appearance in the criminal matter. He waived a right to a preliminary hearing, and the court set the bond at $10,000, the conditions of which included a no contact order with the alleged victim and a surrender of his passport.

{¶4} On the dame day, Weisman, on behalf of her daughter and her 12-year-old son, filled out a request form for a criminal protection order pursuant to R.C. 2903.213. (Weisman later added herself to the protection order as well.) On the same day, the state filed a motion for temporary protection order on her behalf.

{¶5} The next day, on January 3, 2013, the trial court scheduled a hearing on the motion for the protection order. Webley and his counsel appeared at the hearing but objected to it, claiming Webley was not served with a proper notice of the hearing. The court explained that it could issue the protection order ex parte and schedule a hearing later. Webley's counsel opted to go forward with the hearing.

{¶6} At the hearing, Weisman testified that she has been in a relationship with Webley for 14 months prior to the incident on December 31, 2012. She woke up past midnight on New Year's Eve, and went downstairs to look for Webley. Unable to find him anywhere in the house, she took a flashlight into the children's bedroom to look for him. According to Weisman, she found him "with his sweat pants and his boxers pulled down to his mid-thigh with his penis hanging on [her] daughter's bed and [her] daughter asleep under the covers, * * * 18 to 24 inches away from [Webley's] body."

{¶7} Weisman flashed the flashlight in his face. Webley was non-responsive. She shook his body several times but could not wake him up. After scooping her daughter up and taking her somewhere else, she went back to the room. By that time, Webley had pulled up his pants and sat on the bed, disheveled and disoriented. She called the police, who arrested Webley. She took her daughter to the hospital. There was no physical evidence of abuse.

{¶8} Weisman testified she requested a protection order based on what she saw that night, as well as Webley's "uncontrollable rage the night of the events and a pattern of rage behavior in the past." She stated her concerns were based on the following:

* * * Gareth's licensed to hold a gun, as well as just obviously the concern that he is very upset about this situation from phone calls I have received from him, his statements of his non-desire to continue living a life without us makes me concerned that that could extend to me not deserving a life without him.

The day before the hearing, she contacted the police regarding the weapons owned by him that were kept in the residence and the police removed them from the house.

{¶9} After the incident, Weisman checked her family into a hotel in Beachwood out of concerns for their safety. The night before the hearing, she received a text message at 1:02 a.m. from Webley, who was in the hotel's parking lot. The message stated that he saw both of their vehicles in the parking lot.

{¶10} After the hearing, the trial court granted the protection order.[1] On appeal, Webley raises four assignments of error for our review, which we address out of order for ease of discussion. The four assignments of order state:

I. The trial court erred to the prejudice of the appellant when it issued a protection order pursuant to R.C. 2903.213, as R.C. 2903.213 does not permit the issuance of such an order where the alleged victim was a family or household member of the appellant's at the time of the alleged offense.

II. The trial court abused its discretion in granting Ms. Weisman's motion for a protection order as the evidence presented during the hearing did not support a finding that the appellant's presence would impair the safety of Ms. Weisman and her minor children.

III. The trial court erred in not affording the appellant due process of law as it allowed the petitioner to proceed with the hearing on the motion for the

---

[1]Subsequently, the state dismissed the criminal complaint. Instead, Webley was indicted by a grand jury on February 27, 2013, for kidnapping a child under the age of 13 with a sexual motivation specification, two counts of gross sexual imposition, and one count of domestic violence involving Weisman.

protection order despite the fact that the petitioner had not filed the amended motion/petition for a protection order with the Clerk of Court prior to the start of the full hearing and despite the fact that the appellant had not been properly served with a copy of the motion for a protection order prior to the start of the hearing.

IV. The failure of R.C. 2903.213 to include statutory burden of proof in hearings on motions for temporary protective orders constitutes a deprivation of the federal Constitutional guarantee due process.

## Protection Order Statutes: R.C. 2903.213 and 2919.26

{¶11} Several statutes authorize the issuance of a protection order. Under the first assignment of error, Webley claims the trial court erred in issuing a protection order pursuant to R.C. 2903.213, alleging a different statute, R.C. 2919.26, should have been utilized instead because the alleged victim was a family or household member at the time of the incident. We begin with a review of these two statutes.

{¶12} The protection order in this case was sought under R.C. 2903.213 ("Motion for protection order as pretrial condition of release"), found in Chapter 2903 of the Revised Code ("Homicide and Assault; Stalking"). This statute authorizes a complainant or alleged victim of assault, menacing, trespassing, or a sexually oriented offense to seek a temporary protection order when a criminal complaint alleging one of these offenses is filed. R.C. 2903.213(A) states, in pertinent part:

Except when the complaint involves a person who is a family or household member as defined in section 2919.25 of the Revised Code, upon the filing of a complaint that alleges a violation of section 2903.11, 2903.12, 2903.13, 2903.21, 2903.211, 2903.22, or 2911.211 of the Revised

Code, * * * or the commission of a sexually oriented offense, the complainant, the alleged victim, or a family or household member of an alleged victim may file a motion that requests the issuance of a protection order as a pretrial condition of release of the alleged offender * * *. The motion shall be filed with the clerk of the court that has jurisdiction of the case at any time after the filing of the complaint. *If the complaint involves a person who is a family or household member, the complainant, the alleged victim, or the family or household member may file a motion for a temporary protection order pursuant to section 2919.26 of the Revised Code.*

**{¶13}** The statute Webley argues should have been utilized instead, R.C. 2919.26 ("Motion for temporary protection order, form"), is found in Chapter 2919 of the Revised Code ("Offenses Against the Family; Domestic Violence"). It contains very similar provisions and states:

Upon the filing of a complaint that alleges a violation of section 2909.06, 2909.07, 2911.12, or 2911.211 of the Revised Code if the alleged victim of the violation was a family or household member at the time of the violation, * * * or any sexually oriented offense if the alleged victim of the offense was a family or household member at the time of the commission of the offense, the complainant, the alleged victim, or a family or household member of an alleged victim may file * * * a motion that requests the

issuance of a temporary protection order as a pretrial condition of release of the alleged offender, in addition to any bail set under Criminal Rule 46. * * * R.C. 2919.26(A(1).

{¶14} Our comparison of these two statutes reflects parallel procedural provisions. Under both statutes, there are two ways for a protection order to be issued after a criminal complaint alleging certain offenses is filed. Either the alleged victim can request a protection order or the trial court can on its own motion issue an ex parte order, as a pretrial condition of release. Either way, the trial court must hold a hearing within 24 hours to determine whether a protection order should be issued, or remain in effect, respectively. R.C. 2903.213(C) and (D); R.C. 2919.26(C) and (D). Under both statutes, the protection order is effective only until the disposition of the criminal proceeding upon which the protection order is based.

{¶15} Furthermore, under both statutes, at the hearing, the person requesting the protection order shall appear before the court to provide the court with information concerning the basis of the motion. If the court finds that "the safety and protection of the complainant or the alleged victim may be impaired by the continued presence of the alleged offender," it shall order the protection order. R.C. 2903.213(C)(1) and 2919.26(C)(1).

{¶16} The two statutes differ in one respect procedurally. R.C. 2919.26 expressly requires the presence of the alleged offender at the hearing.

R.C. 2919.26(D)(2).   On the other hand, R.C. 2903.213, the statute utilized by the state in this case, is silent on this requirement.[2]   R.C. 2903.213(D)(2).

{¶17} Webley argues the trial court erred in granting the protection order under R.C. 2903.213, claiming that because Weisman and her minor children were "family or household members," this statute is not applicable and the trial court did not have authority to grant a protection order under this statute.   He draws our attention to the first sentence of R.C. 2903.213, which states, "[e]xcept when the complaint involves a person who is a family or household member as defined in section 2919.25 of the Revised Code * * *."

{¶18} Webley is correct that Weisman and her minor children qualify as "family or household members."[3]   Reading R.C. 2903.213(A)(1) in its entirely, however, we interpret R.C. 2903.213(A)(1) as *permitting* the complainant/alleged victim/family or

---

[2]The two statutes differ in another aspect.   While both statutes authorize the trial court to issue an order containing "terms designed to ensure the safety and protection" of the complainant or alleged victim, R.C. 2903.213(C)(1) and 2919.26(C)(1), the latter alone requires the protection order to notify the alleged offender that it "may be unlawful for the [alleged offender] to possess or purchase a firearm."   R.C. 2919.26(G)(1).

[3]Under R.C. 2919.25, a "family or household member" includes one "who is residing or has resided with the offender" and who is "a person living as a spouse."   It also includes one "who "is residing or has resided with the offender" and who is a child of "a person living as a spouse."

Furthermore, "person living as a spouse" means "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."

household member to request the protection order under either statute if the criminal complaint involves a family or household member — as indicated by the word "may" in the last sentence of R.C. 2903.213(A)(1).

{¶19} *Even if* R.C. 2903.213 were to be read as requiring a complainant or an alleged victim who is a household member to proceed under R.C. 2919.26 only, we observe that Webley had not been deprived of any due process rights or otherwise prejudiced by the utilization of R.C. 2903.213 instead, because the two statutes contain parallel provisions. Although R.C. 2919.26 had the additional requirement that the hearing be held "in the presence of the alleged offender," Webley did not suffer prejudice, because he *was* present at the hearing, assisted by very able counsel, who presented several exhibits and vigorously cross-examined his accuser. The trial court, furthermore, offered Webley an opportunity to present his own evidence.

{¶20} Thus, even if R.C. 2903.213 were to be interpreted as Webley proposes and were not applicable when the complainant or the alleged victim is a household member, he fails to demonstrate any prejudice he suffered as a result of the trial court's issuance of the protection order under that statute. The first assignment of error lacks merit.

**Service and Notice issues**

{¶21} Under the third assignment of error, Webley complains his due process rights were also violated because the motion for protection order, as amended by the state, was not served on him or filed with the clerk of court prior to the hearing.

**{¶22}** The docket of this case reflects the motion for the protection order was filed on January 2, 2013, at 12:35 p.m. It further reflects that an amended motion was filed the next day, on January 3, 2013, at 4:18 p.m. — hours after the hearing over the motion was held. At the hearing, the state explained the motion had to be amended because of a "typo." Our review of the original and the amended motions indicates the original motion bears the name of former County Prosecutor William D. Mason, instead of current Prosecutor Timothy McGinty, whose name is correctly reflected in the amended motion.[4]

**{¶23}** As the amended motion is substantially similar to the original motion, we do not perceive any prejudice to Webley by the filing of the amended motion correcting an innocuous error on the same day of the hearing.

**{¶24}** As to Webley's allegation that he was not properly served with the amended motion before the hearing, R.C. 2903.213 (as well as R.C. 2919.26) permits the court to issue a protection order as a pretrial condition of release after a criminal complaint is filed upon finding the safety and protection of the complainant or alleged victim warrants it; neither statute expressly require the service of the motion on the alleged offender. As we noted above, R.C. 2903.213 does not even explicitly require the presence of the alleged offender at the hearing. The statute only requires the trial court to hold a hearing, within 24 hours after a motion is filed, to hear the testimony from the person requesting the order and determine whether the protection order should be issued. The

---

[4]Also, the two motions had a slightly different certificate of service. In the original motion, the motion was served by email upon the public defender; in the amended motion, the motion was served personally on Webley's newly retained counsel.

statute only requires a copy of the protection order to be delivered to the alleged offender the same day the order is issued. R.C. 2903.213(C)(1) and (G)(1). Webley does not claim that he was not served with a copy of the protection order.

{¶25} In any event, the essential elements of due process are notice and an opportunity to respond. *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The notice should be reasonably calculated to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L.Ed. 865 (1950). As discussed under our analysis of the first assignment of error, Webley clearly had advance notice of the hearing, because he appeared with counsel at the hearing, and counsel brought several documents and exhibits that were used to impeach Webley's accuser's credibility. While Webley indeed had very short notice of the hearing, we note that both R.C. 2903.213 and 2919.26 contemplate a speedy resolution of the protection order matter — requiring the hearing to be held the next court day.

{¶26} Webley cites *Lindsay v. Jackson*, 1st Dist. Hamilton No. C-990786, 2000 Ohio App. LEXIS 4043 (Sept. 8, 2000) to support his claim. Webley's reliance on *Lindsay* is misplaced. *Lindsay* involved yet a different protection order statute, R.C. 2903.214 ("Petition for protection order to protect victim of menacing by stalking or sexually oriented offense."). That statute permits the issuance of protection orders for victims of menacing by stalking, based on a petitioner's allegations (rather than on the

filing of a criminal complaint, as in the instant case).   Furthermore, that statute requires the trial court to hold an ex parte hearing within the next court day of the request of a protection order; however, unlike R.C. 2903.213 and 2919.26, that statute goes on to provide for a "*full hearing*" within seven court days if the court issues a protection order after an ex parte hearing, and further explicitly provides that the court "shall give the respondent notice of, and an opportunity to be heard at, the full hearing."   R.C. 2903.214(D)(2)(a).

{¶27}   In *Lindsay*, after a magistrate issued an ex parte protection order, appellant was served with a copy of the protection order, which included notice that a full hearing would be held four days later. Because the four-day period included the weekend, appellant received notice of the hearing only one business day prior to the hearing.   The First District held that, under such circumstances, appellant was denied due process of law because he did not receive adequate notice of the hearing or a meaningful opportunity to present his side of the story. The short notice did not give him sufficient time to contact his attorney, much less to know the claims of the opposing party and to prepare a defense.

{¶28} *Lindsay* is inapposite.   The statute governing *Lindsay* provides for a "full hearing" and provides for a longer period (seven days) for this hearing to be held.   In contrast, both R.C. 2903.213 and 2919.26 — which permits the court to issue a protection order after a criminal complaint is filed — require the trial court to act swiftly to resolve the request of a protection order without a "full hearing."   Webley's citation to *Lindsay* does not support his claim.   The third assignment of error is without merit.

## Burden of Proof

**{¶29}** Under the fourth assignment of error, Webley claims R.C. 2903.213 violates his constitutional right to due process because the statute does not include a burden of proof.

**{¶30}** Failure to raise at the trial court level the issue of the constitutionality of a statute constitutes a waiver of such issue and need not be heard for the first time on appeal. *State v. Smith*, 61 Ohio St.3d 284, 293, 574 N.E.3d 284 (1991).

**{¶31}** Moreover, even if we were to address the merit of this claim, we are unaware of any authority holding the lack of a statutory burden of proof renders a statute unconstitutional.

**{¶32}** Instead, the Supreme Court of Ohio, interpreting yet a different protection order statute relating to an allegation of domestic violence (R.C. 3113.31), has stated that when granting a protection order, the trial court must find that the petitioner has shown by a preponderance of the evidence that the petitioner is in danger of domestic violence. The court explained that since the statute is silent on the standard of proof, a preponderance of evidence is the proper standard. *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997). *See also Abuhamda-Sliman v. Sliman*, 8th Dist. Cuyahoga No. 85174, 2009-Ohio-3597, ¶ 8 (8th Dist.) (a preponderance of evidence standard of proof applied to R.C. 3113.31); *Strausser v. White*, 8th Dist. Cuyahoga No. 85174, 2009-Ohio-3597, ¶ 30 (preponderance of evidence standard of proof applied to R.C. 2903.214).

**{¶33}** The fourth assignment of error lacks merit.

## Second Assignment of Error

**{¶34}** Under the second assignment or error, Webley argues the trial court abused its discretion in granting a motion for a protection order because the evidence presented at the hearing did not support a finding that Webley's presence would impair the safety of Weisman and her minor children.

**{¶35}** This court has held that, on appeal from the issuance of a protection order pursuant to R.C. 2903.214, our standard of review is whether there was some competent, credible evidence to support the order. *Sliman*, 8th Dist. Cuyahoga No. 85174, 2009-Ohio-3597, at ¶ 10; *White*, 8th Dist. Cuyahoga No. 85174, 2009-Ohio-3597, at ¶ 33.

**{¶36}** At the hearing over the instant motion, Weisman testified she found Webley in her daughter's bed with his pants pulled down. She stated she sought a protection order based on what she witnessed that night, as well as "a pattern of rage behavior in the past." She also referenced Webley's license to hold a gun, his statement to her about "his non-desire to continue living a life without [her and her family], and her concern that he might feel that she did not "[deserve] a life without him." The testimony may or may not prove the offense Webley was charged with, but it certainly demonstrates the legitimacy of her fear at the time she filed for the protection order.

**{¶37}** Our review of the testimony, the credibility of which is strictly a matter for the trial court, reflects sufficient competent, credible evidence upon which the trial court could reasonably find that "the safety and protection of the complainant or the alleged

victim may be impaired by the continued presence of the alleged offender" and grant the protection order sought. The second assignment of error is without merit.

{¶38} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

KENNETH A. ROCCO, P.J., and
MARY EILEEN KILBANE, J., CONCUR